142 Nev., Advance Opinion 49



FILED

Jul 02 2026
ELIZABETH A. BROWN
CLERK OF SUPREME COURT

## IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL DUSTIN ALLEN,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 88252

Appeal from a judgment of conviction, pursuant to a jury verdict, of two counts of sexual assault with a minor under 14 years of age and one count of lewdness with a child under the age of 14. Eighth Judicial District Court, Clark County; Ronald J. Israel, Judge.

*Reversed and remanded.*

Goodman Law Group, P.C., and Ross C. Goodman, Las Vegas,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Samuel Kern and Taleen Pandukht, Chief Deputy District Attorneys, Clark County,
for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

Evidence is relevant if it "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the

action more or less probable than it would be without the evidence." NRS 48.015. In an alternative-suspect defense to a sexual assault charge, evidence that the alternative suspect previously committed sexual assault tends to support a propensity inference and thus is relevant to the defense theory. Appellant Michael Dustin Allen was convicted of two counts of sexual assault with a minor under 14 years of age and one count of lewdness with a child under the age of 14. At trial, he presented an alternative-suspect defense, arguing that A.S.—Allen's adult son and the victim's half-brother—was the true perpetrator.[1] In preparing this defense, Allen sought juvenile records showing A.S. had sexually assaulted a stepsister when he was a teenager and the stepsister was around the same age as the instant victim. The district court judge deemed nothing in the records "relevant or material" to the case, and different judges subsequently assigned to the case declined to consider the admissibility of A.S.'s prior sexual assault at trial. We hold the district court erred in finding A.S.'s prior offense irrelevant and thereby declining to order the disclosure of his juvenile records. Because that error inhibited the defense's investigation and prevented Allen from attempting to use A.S.'s prior offense to strengthen his theory of defense at trial, we conclude that this error was not harmless. Therefore, we reverse the judgment of conviction and remand to the district court for a new trial.

---

[1]We refer to A.S. by his initials because this case references allegations and information from when he was a juvenile.

2

*FACTS AND PROCEDURAL HISTORY*

A.H. was sexually assaulted in her bedroom one night when she was 12 years old. At the time, she lived with her parents and siblings, including her then-21-year-old half-brother, A.S. The victim and A.S. share a mother, Desiree; Allen is A.S.'s father. Allen stayed in a separate guest house on Desiree's property but had full access to the main home. At night, Allen would regularly go into A.H.'s room, with her permission, to take her puppy outside.

A.H. testified that on the night of the assault, she woke up around 11:45 p.m. to someone opening the door to her room. She fell back asleep but was awakened again because someone was holding one of her breasts. She testified that she was "kind of waking up, so it was very foggy" and her eyes were "barely open," but she identified Allen as the person in her room. She testified that the perpetrator then digitally penetrated her vagina, moving two fingers "back and forth" "inside of [her]," at one point stopping and licking his fingers before resuming the digital penetration. The assault went on until the puppy began to get agitated, at which point the perpetrator stopped and took the puppy outside. Upon returning with the puppy ten minutes later, he asked A.H. why she was awake, to which she responded that she had randomly awakened. He told her good night, kissed her on the forehead, and left her room. The next day, A.H. reported the incident to her mother and to the police and underwent a sexual assault exam. Police arrested Allen later that day.

Early on, Allen indicated that he would pursue an alternative-suspect defense. Allen's theory was that A.H. had misidentified him and that A.H.'s half-brother, A.S., was the true perpetrator. To support this

theory, Allen sought records of A.S.'s juvenile adjudication showing that at age 13, A.S. had committed a sexual offense of a similar nature against an 11-year-old stepsibling. The parties stipulated to an in camera review of A.S.'s juvenile records for the court to determine which documents, if any, to release to the parties. The then-assigned judge ordered the records released to the court.[2] Before the judge reviewed the records, however, the case was transferred.

Two years after the stipulation, the second assigned judge reviewed A.S.'s juvenile records.[3] The second judge determined that "nothing" in A.S.'s juvenile records "would be relevant or material in the case at hand" and provided the ruling denying the release of the records to the parties in a minute order devoid of any reasoning. It is unclear if the second judge knew about Allen's proposed alternative-suspect defense.

Two weeks later, the case was transferred again, and Allen moved to reconsider the order denying release of A.S.'s juvenile records. Allen indicated that the information was necessary both for further investigation and for cross-examination of witnesses at trial, arguing that the second judge had only the stipulation of the parties and not the full context necessary to understand the records' relevance to the defense theory. The third assigned judge denied the motion to reconsider without reviewing A.S.'s juvenile records, reasoning that there was nothing "in the

---

[2]The records included the juvenile delinquency petition, court minutes related to the petition, a psychosexual evaluation, and discharge paperwork.

[3]We note that this was during the COVID-19 pandemic, which may have caused some of the delays and department transfers.

4

record indicating that [the judge who reviewed the records] did not have that understanding" and that she did not find any error in the initial ruling. The relevancy of A.S.'s prior sexual misconduct and the release of his juvenile records conclusively denied, Allen did not pursue any other means to introduce A.S.'s prior offense.

Just before trial, the case was reassigned a final time. Immediately before jury selection began, the State sought confirmation that "no one is planning on getting into" A.S.'s prior sexual offense. The State indicated that the second judge, who had reviewed the juvenile records, "previously deemed [A.S.'s prior offense] inadmissible and irrelevant." The defense agreed with the State's representation. The trial judge, who was the fourth assigned judge, accepted the parties' representations that the issue had been addressed and confirmed the exclusion of A.S.'s prior offense. The court did not engage in an independent admissibility analysis, and neither of the parties requested that it do so.

Nevertheless, Allen presented his alternative-suspect defense to the jury through the State's witnesses and three of his own. He introduced evidence that A.S.'s bedroom was located down the hallway from the victim's room, that A.S. had been home for at least part of the night, and that the victim had told her cousin that A.S. was the person who had assaulted her. When the State called the victim and her mother, Desiree, to testify, the jury submitted several questions for them about A.S., including questions concerning his location on the night of the assault and whether he had any convictions for or allegations of similar offenses, but the court refused to ask them. The State called A.S. as a rebuttal witness to testify about his relationship with the victim, where he was the night of

5

the assault, and whether he assaulted A.H. He was not asked about his prior sexual offense.

The jury found Allen guilty on all charges. He was sentenced to concurrent terms resulting in an aggregate sentence of life with eligibility of parole after 35 years. Allen appeals, arguing that the district court improperly excluded evidence of A.S.'s prior sexual offense at trial, that insufficient evidence supported the conviction, and that cumulative error otherwise warrants reversal.

## DISCUSSION

Allen's primary argument is that the district court erred in excluding evidence of A.S.'s prior sexual offense at trial. Allen traces that error back to the original finding that the contents of A.S.'s juvenile records were not "relevant or material." We agree.

*The district court abused its discretion in finding the contents of A.S.'s juvenile records irrelevant*

The fundamental issue in this appeal is the relevance of A.S.'s prior sexual offense. Evidence is relevant when it "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." NRS 48.015. We review a district court's relevance determination for an abuse of discretion. *Sterling v. State*, 108 Nev. 391, 395, 834 P.2d 400, 403 (1992). "An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason." *Pundyk v. State*, 136 Nev. 373, 375, 467 P.3d 605, 607 (2020) (citation modified).

Here, the district court found, without further explanation, that "nothing" in A.S.'s juvenile records "would be relevant or material in th[is] case." We disagree. The instant offense alleges digital penetration of his

6

12-year-old half-sibling's vagina when she was sleeping. The records demonstrate that A.S. previously digitally penetrated his 11-year-old stepsister's vagina when she was sleeping. Additionally, the records indicate that A.S. admitted to assaulting the stepsister and explained that he had targeted her because she was "not related to [him] and [A.H. was] too young."[4] This prior misconduct goes to A.S.'s propensity to commit sexual assault and makes it more probable that A.S., not Allen, assaulted the victim in this case, especially considering the nearly identical nature of the assaults and A.S.'s statement about A.H. Thus, we conclude that the evidence of A.S.'s prior sexual misconduct contained in his juvenile records tends to support Allen's theory of defense. Not only that, but the contents of the records may have led to additional information pertaining to Allen's defense. The district court's finding to the contrary disregarded the low threshold for relevance. Therefore, we hold that the district court abused its discretion in finding the contents of these records irrelevant.[5]

---

[4]At that time, A.H. was 3 years old.

[5]Relevance is only a threshold question of admissibility. *Brown v. State*, 107 Nev. 164, 168, 807 P.2d 1379, 1382 (1991). The district court never reached other admissibility inquiries, such as the balancing test under NRS 48.035 or how NRS 48.045(3) applies to evidence of a witness's prior sexual misconduct. We therefore cannot review the admissibility of A.S.'s prior offense at trial beyond the relevance determination. *See State v. Scott*, 37 Nev. 412, 429-30, 142 P. 1053, 1059 (1914) (indicating evidentiary determinations are "in the first instance to be determined by the [district] court"). Regardless, improperly determining that threshold question and thereby foreclosing any further consideration of admissibility was error.

7

We note that the judge resolving the reconsideration motion could have addressed this error but failed to do so. Generally, when a case is transferred, the successor judge should refrain from overruling previous decisions by the predecessor judge. *Litchfield v. Tucson Ridge Homeowners Ass'n*, 140 Nev., Adv. Op. 57, 555 P.3d 267, 271 (2024). This is not a total bar to reevaluation, however. Reconsideration is warranted under compelling circumstances, such as when new evidence becomes available, the controlling law changes, or "the prior decision was clearly erroneous and would result in manifest injustice if enforced." *Id.* at 269 (citation modified).

Here, whether to release A.S.'s juvenile records was never fully litigated because the in camera review resulted from a stipulation initially submitted to the first assigned judge, who had presided over the case for 20 months and was familiar with the defense theory. Even after the second judge conducted an in camera review, the court did not hold a hearing for the parties to argue the relevance of A.S.'s prior offense. In contrast, when moving to reconsider, Allen explained that the records demonstrated A.S. had previously engaged in "sexual misconduct with a sibling" and that the prior offense, coupled with A.S.'s "access to the alleged victim," made him a viable alternative suspect. Thus, Allen argued, the records were "highly relevant and necessary" to the defense investigation in developing the defense alternative-suspect theory and cross-examining witnesses. Given this additional context, reconsideration was appropriate.

*The error was not harmless*

We will not disturb a district court's erroneous evidentiary ruling "unless it had a substantial and injurious effect or influence in determining the jury's verdict." *Chabot v. State*, 142 Nev., Adv. Op. 27, 586

P.3d 1230, 1235 (2026) (citation modified). In other words, an evidentiary error is harmless "if it is apparent that a conviction would have resulted even if the error has not been committed." *Id.* at 1235-36 (citation modified). We have previously deemed the erroneous exclusion of evidence not harmless when it tends to prove the defendant's theory of the case. *Cosio v. State*, 106 Nev. 327, 330, 793 P.2d 836, 838-39 (1990).

Here, the order excluding the juvenile records undoubtedly affected the proceedings. The immediate consequence was that A.S.'s juvenile records were withheld from the parties, denying Allen the opportunity to investigate the information contained in those records. That investigation may have led to additional evidence and further developed Allen's theory of defense. Moreover, Allen was prevented from introducing evidence relating to A.S.'s prior offense at trial, including through cross-examination of A.H., A.S., or Desiree on the basis of Allen's personal knowledge. Because the district court went beyond determining whether to release the juvenile records and deemed the information therein irrelevant and immaterial, the admissibility inquiry was terminated at that juncture. *See* NRS 48.025(2) ("Evidence which is not relevant is not admissible."). Had the district court reached the admissibility determination and permitted evidence of A.S.'s prior offense, the verdict may have been different.

The record demonstrates that even without this evidence, the jury considered A.S. to be a viable alternative suspect. When the victim testified, the jury submitted questions about A.S.'s location at the time of the assault, whether A.S. was right-handed or left-handed, and whether A.S. had any prior convictions for or allegations of similar offenses. The

9

district court declined to pose any of these jury questions. When Desiree testified, the State asked about camera footage from the front door of the main house showing A.S. leaving the house around 9:13 p.m. and returning the next morning around 3:00 a.m. The jury submitted two questions about whether someone could go around the side of the main house and enter through the back door without being seen on camera, which Desiree answered in the affirmative. The jury also asked whether the victim had ever indicated that something similar had happened between anyone in the household in the past. Desiree answered in the negative. This answer was arguably misleading because Desiree was aware that A.S. had previously sexually assaulted his stepsister. And this exchange was not the only one that suggested nothing like this had previously occurred within the household.

Twice, the State exploited the ruling on the review of A.S.'s juvenile records. During Desiree's testimony on redirect, the State asked, "Would it be fair to say that this was the first time anything like this had ever happened to any of your kids?" Despite her knowledge of A.S.'s prior assault of her stepdaughter, Desiree answered, "Yes." Defense counsel argued outside the presence of the jury that the State had opened the door to raise A.S.'s prior offense. The State reiterated that the judge who reviewed the juvenile records "previously ruled that that specific issue was inadmissible and immaterial." Defense counsel then dropped that line of questioning. Later, the State called A.S. to testify to rebut the defense theory, knowing that he would not be questioned about the prior offense.

Because A.S.'s prior sexual offense significantly strengthens Allen's alternative-suspect defense and especially in light of the jurors'

10

questions and the inaccurate representation that nothing of this nature had previously occurred in the family, we conclude that the jury may have reached a different conclusion as to Allen's guilt had evidence of A.S.'s prior sexual offense been presented. We therefore conclude that the error was not harmless. Accordingly, we reverse the judgment of conviction and remand for a new trial.[6]

*CONCLUSION*

In the context of an alternative-suspect defense to a sexual assault allegation, evidence that the alternative suspect previously committed a similar act of sexual assault is relevant where it tends to support a propensity inference and thereby make the theory of defense more probable. Here, we conclude that the district court abused its discretion in finding "nothing that would be relevant or material" in records showing that A.S., the proposed alternative suspect, previously committed a sexual offense similar to the one at issue. We further conclude that this error was not harmless, as deeming the information irrelevant foreclosed pretrial investigation and the question of admissibility at trial. Knowing A.S. had previously perpetrated a similar assault may have determinatively

---

[6]Upon review of the record, we conclude that the evidence was sufficient to support Allen's conviction on all counts. *Barber v. State*, 131 Nev. 1065, 1071, 363 P.3d 459, 464 (2015). Therefore, remand for a new trial is the appropriate remedy. *Burks v. United States*, 437 U.S. 1, 15 (1978). Additionally, because we conclude that the district court committed reversible error in deeming A.S.'s prior sexual misconduct irrelevant, we need not address the cumulative-error argument. *FGA, Inc. v. Giglio*, 128 Nev. 271, 289 n.9, 278 P.3d 490, 501 n.9 (2012).

impacted the verdict. Accordingly, we reverse the judgment of conviction and remand for a new trial.

Stiglich, J.

We concur:

Herndon, C.J.

Pickering, J.

Parraguirre, J.

Bell, J.

Cadish, J.

Lee, J.